Allamon *v.* The Mayor &c. of Albany.

43    33
136a  609

43o   33
f 56ad197
f 56ad200.

ALLAMON *vs.* THE MAYOR &c. OF THE CITY OF ALBANY.

The plaintiff and defendants entered into a written agreement by which the former agreed, for a certain sum to be paid him by the latter, to do all the carpenter's work upon a school house to be erected, and to furnish and use all the requisite materials; and that he would commence said work, and would " proceed therewith, without delay, and in such a manner as not to delay the contractor for the mason work." *Held* that this latter covenant raised an implied obligation on the part of the defendants to have the building in readiness for the plaintiff to perform the condition.

*Held,* also, that this was a mutual covenant, on both the parties; on the part of the plaintiff that he would commence and proceed at once, and on the part of the defendants that they would be ready to allow him to do so.

And that the plaintiff having sustained damage by reason of the defendants' delay in having the building ready for him to do the work stipulated, he could maintain an action to recover the amount.

*Held,* further, that the plaintiff did not waive the defendants' breach of the contract, by going on, without complaint or objection, and completing the work. That he had a right to proceed with it, after the breach, and compel the defendants to pay the increased expenses incurred by reason of the delay.

Allamon *v*. The Mayor &c. of Albany.

And that an action to recover such increased expenses might be maintained upon a *quantum meruit*, independent of the contract.

*Held*, also, that the plaintiff having been delayed in the performance of his contract by the act or omission of the defendants, until wages were higher, and the prices of materials increased, he was entitled to recover the additional amount he was obliged to expend, in completing his contract.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover damages for an alleged breach of a contract made and entered into between the plaintiff and the defendants on the 15th day of March, 1856, by which the plaintiff agreed, for a certain sum to be paid him, to do all the carpenter's work upon a school house to be erected in the ninth ward of the city of Albany, and to furnish and use all the requisite materials necessary to be furnished, &c. The contract contained a covenant, which was as follows: "And will commence said work and will proceed therewith without delay, and in such a manner as not to delay the contractor for the mason work." The plaintiff claimed to recover damages by reason of the failure on the part of the defendants to have the building in such a state of readiness that the plaintiff could go on and commence his work "without delay, and in such a manner as not to delay the contractor for the mason work." The complaint alleged a delay of three months in having the building in readiness, after the taking of the contract, and by reason thereof the plaintiff was compelled to do most of his work through short days of the fall and winter, and the price of materials rose greatly. That after making the contract he employed a large number of men to assist, whom he was obliged to pay although unable to use them. Upon the trial it was proved that the work was commenced in June, 1856, and finished in July, 1857. The plaintiff proved several items of losses by reason of detention, increased price of materials, difference in men's time whether the work was done in the summer or winter, &c., amounting, as he claimed, to $1220. It also appeared that the contract was assigned to James D. Wasson as collateral security for money loaned

to the plaintiff, and that the plaintiff gave him a receipt, in *full payment of the contract.* Various questions were raised in the case, which will appear in the opinion. The referee reported in favor of the plaintiff for $725.13. Judgment was entered on his report and the defendants appealed.

*S. Hand,* for the appellants.

*L. Tremain,* for the respondent.

*By the Court,* MILLER, J. By the terms of the contract between the plaintiff and the defendants, for a breach of which a recovery was had in this action, no definite time was fixed for the completion of the plaintiff's work under it, but it contained a covenant by which the plaintiff was bound "to commence said work and proceed therewith without delay, and in such manner as not to delay the contractor for the mason work." It will be observed that here was a positive engagement on the part of the plaintiff as to the manner in which he was to proceed with the performance of the work he had agreed to do, and a direct promise and obligation on his part that he should commence at once and proceed without delay to its completion. If the plaintiff had failed to proceed with the work and fulfill this provision of the contract without delay, he would most certainly have been liable for any damages which may have accrued to the defendants, unless the delay was caused by the default of the defendants. This covenant in the contract was, to a considerable extent, for the advantage and benefit of the defendants, and contemplated a prompt and speedy performance of the work contracted for. The plaintiff, being thus bound by his agreement, commenced and proceeded with the job without delay, and was liable in damages for a non-performance of the covenant, which obligated him to do so. The question arises whether there was not a corresponding obligation on the part of the defendants, implied from the contract itself,

that they were to have the building upon which the work was to be executed, in readiness for the plaintiff, so as to enable him to commence and fulfill this provision of the contract. Was it a provision which bound the plaintiff alone, with no agreement whatever on the part of the defendants that they were to have the building in such a condition as to enable him to fulfill the contract? If it was thus confined in its character, it would be a contract merely on one side, with no corresponding obligation, no duty to be performed on the part of the other contracting party. There would be no mutuality in such a covenant, if thus limited in its operation and effect. While on the one hand the plaintiff would be bound to incur liabilities, expend money and make arrangements to complete the contract and perform its conditions, and thereby subject himself to large expenses and losses; on the other, the defendants would be free from all liability, entirely exonerated from all obligations, and permitted to remain quiet, without doing a single thing to enable the plaintiff to perform his contract. .

Suppose the plaintiff had proceeded, as he had a right to do, and provided the materials necessary to perform the work, and the defendants failed to provide the building so that he could use them until they became depreciated in value, and caused serious loss to the plaintiff; can there be a doubt that the defendants would be liable? Again: suppose they had not provided any building whatsoever, so that the plaintiff was utterly unable to perform this condition, and was damaged greatly thereby; could they then be exonerated? If they had a right to delay three months, then they were equally authorized to delay for a year, or forever, and the plaintiff was without any redress whatever. In such a view of the question, the contract was utterly void as to the defendants, while the plaintiff was bound to perform it, and was liable for any failure to do so.

I think the covenant on the part of the plaintiff, to commence the work and proceed therewith without delay, raised

an implied obligation, on the part of the defendants, to have the building in readiness for the plaintiff to fulfill this condition. By entering into such a contract the defendants agreed that they would be prepared for its performance, and it is to be assumed that the very thing essential for that purpose constituted an element of the agreement. It was a mutual covenant, binding upon both the parties; on the part of the plaintiff, that he would commence and proceed at once; and on the part of the defendants, that they would be ready to allow him to do so. Without such a mutual contract neither party could be bound; the plaintiff might take his own time, and proceed at any time he deemed best, and the defendants were not bound to provide the building for the purpose of having the work done.

The principle decided in *Holmes* v. *Groff*, (3 *M. & W.* 38,) appears to be applicable to the case at bar. There the defendants were not allowed a deduction under the contract from the contract price, for the non-completion of the building within the specified time, because they were unable to give possession of the building to the plaintiff for some weeks. There was no express provision in that contract, that the defendants should give possession, in so many words, but it was essential for its performance; such is precisely the case here. Until the building was in readiness, it was utterly out of the power of the plaintiff to perform.

It is said that there was no breach of the contract, and that it only imposed upon the defendants a single duty, and that was to pay the plaintiff for his work. I think otherwise. It would certainly be remarkable if, with a positive duty imposed upon the plaintiff, no corresponding obligations rested upon the defendants. Nor is it adding any thing to the written contract, to infer an implied obligation to do what was actually intended, and what was absolutely essential to give force, effect and vitality to it. Without this, it would be entirely useless and ineffective for any purpose. The case stands thus: The defendants desired that the plaintiff

should do the work in question; it could not be performed with-out the building was in readiness for that purpose; the plaintiff agreed to commence the work, and proceed with it without delay. It necessarily follows that the defendants were to fur-nish an opportunity to carry out the contract, and impliedly agreed to do so. There being an obligation on the part of the defendants which was not performed by them, and the plaintiff having sustained damages by reason of such non-performance, it follows that the action was properly brought.

It is said that the plaintiff waived the alleged breach of the contract, by going on without complaint or objection and completing the work, some three months after the execution of the contract. I think there was no waiver by proceeding with the contract, the failure of the defendants to have the building ready for him preventing his going on with it at an earlier day. He had a right to proceed with it afterwards, and compel the defendants to pay the increased expenses incurred by reason of the delay. Where a party was pre-vented from the performance of a contract within the stipu-lated time by the omission of the other, and subsequently performed the work agreed upon at a higher price, *it was held,* that he was not obliged to bring his action on the con-tract, but might resort to the *quantum meruit* to obtain his indemnity. (*Dubois* v. *The Delaware and Hudson Canal Co.,* 4 *Wend.* 285.) The court also held in that case, that if the work was more expensive, the additional expense thus incur-red should be added to the contract price. The loss may have been far greater to abandon the contract entirely, than to proceed with its execution so far as practicable; and under the authority cited, the actual damages would not be con-fined to his actual loss at that time. Nor do I understand that the authorities referred to by the defendants' counsel hold any such doctrine, under circumstances similar to the present case. (*See* 17 *John.* 357; 7 *Hill,* 61.) The plain-tiff had, I think, a perfect right to proceed to fulfill the con-

tract, and the defendants, as they had failed to perform it, were liable for all damages incurred by reason of his doing so.

It is further urged that the assignment of the contract to Wasson, and Wasson's receipt in full, deprives the plaintiff of all claim arising from a breach of it. There is evidence to prove that the contract was never assigned absolutely, but only as collateral, and that before suit brought Wasson was paid in full. The referee has found, that at the time of the commencement of this suit the plaintiff was the absolute owner of the claim, and that it has never been paid. The receipt given by Wasson was in payment for the contract price, and under all the circumstances may be considered as embracing only the money due upon the contract. Besides, this is an action to recover damages by reason of the defendants failing to fulfill their contract, and payment of the contract price can scarcely be considered as a bar to such an action. Although the claim originated out of the contract itself, yet the action arises from a failure to fulfill it, on the part of the defendants, and may be maintained upon a *quantum meruit*, independent of the contract.

It is also insisted that the referee erred as to the measure of damages; that the higher price paid by the plaintiff for work and materials, owing to the later day at which the plaintiff commenced his work, can not be recovered; and that the short days in winter, or the cold weather, were not proper to be taken into consideration. In reference to the first branch of the objection, I think the case is distinguishable from those cited by the defendants' counsel. (7 *Hill*, 61. 2 *Seld.* 85.) In the first case, (7 *Hill*, 72,) in estimating the damages, it was assumed that the plaintiffs were necessarily compelled to break up all their sub-contracts, as a consequence of a breach of the principal one, and that this was to be considered in settling the amount of damages, which was held to be erroneous. No such question arises in the present case. The plaintiff was not necessarily bound to purchase the materials before they were required for use; and the evi-

dence does not show that the labor could be obtained at any lower rate or more advantageously than it was. In regard to the short days in winter, and the cold weather, I think so far as they caused an increased expenditure they were proper to be taken into consideration. The delay arose in consequence of the omission of the defendants to perform their part of the contract, and there is no good reason why they should not pay for increased expenses, which they were instrumental in producing. The referee has found, that in consequence of the delay the wages were necessarily higher, and the price of materials increased, and I think he adopted the proper rule as to damages.

For the reasons given, a new trial must be denied, and the judgment entered on the referee's report affirmed, with costs.

[ALBANY GENERAL TERM, March 7, 1864. *Potter*, *Miller* and *Ingalls*, Justices.]