MILFORD SPINNING & WEAVING CORPORATION OF NEW HAMPSHIRE, INC., Respondent, *v.* JACOB MANOWITZ, Doing Business as J. MANOWITZ & SONS, Appellant.

First Department, November 17, 1922.

Payment — action to recover balance of account — defenses of payment and of accord and satisfaction — evidence establishes defense of payment — defendant sent check to plaintiff with voucher attached stating that check was in full payment of account — voucher annexed contained charges for goods sold defendant and credit for damages caused defendant by delay — plaintiff received and accepted check but denied receiving letter — finding that there was no accord and satisfaction against weight of evidence — error to charge that mere sending and acceptance of check would not constitute accord and satisfaction unless there was agreement.

The defense of payment interposed by defendant in an action to recover an unpaid balance for goods sold was sustained by the evidence and the finding of the jury to the contrary was against the weight thereof, where it appeared

that the plaintiff had agreed to sell a large quantity of cloth to the defendant; that it was behind in filling its order; that complaints had been made by the defendant concerning the delay and he had claimed damages because thereof; that a representative of the plaintiff agreed with the defendant to allow two cents a yard on part of the cloth already paid for and told the defendant to mail a check for the balance then due less the deduction; that the defendant mailed the check to the plaintiff and attached thereto a voucher marked " Do not detach. This check is in full payment of the following account, and the payee accepts it as such;" that the defendant put on the voucher items of the bills of goods which were then due and the credit allowance agreed to by the plaintiff's representative and made out the check for the difference between the credit and the balance; defendant claimed that the check was mailed to the plaintiff accompanied by a letter which also stated that the check was in full payment but the plaintiff denied ever having received the letter or voucher; that the plaintiff received the check and accepted it, gave the defendant credit for the amount thereof on his account and also entered a credit of the amount of the deduction claimed by the defendant for delay and failed on the trial to explain those entries satisfactorily.

As to the defense of accord and satisfaction the finding by the jury that the defense was not proven is against the weight of the evidence.

The instruction by the court in reference to the defense of accord and satisfaction that the mere sending of the check and its acceptance by the plaintiff would not constitute an accord and satisfaction in the absence of a prior agreement therefor was erroneous, since the agreement of the parties to accept a lesser sum in accord and satisfaction of a debt between them as to which there is a *bona fide* dispute can be implied from the facts in the case, such as the acceptance of the amount tendered with full knowledge of the fact that it is being paid in full discharge of the claim.

APPEAL by the defendant, Jacob Manowitz, from a judgment of the Supreme Court, in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of November, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 16th day of November, 1921, denying defendant's motion for a new trial made upon the minutes.

*Prince & Nathan* [*Sidney J. Loeb* of counsel; *Leon M. Prince* with him on the brief], for the appellant.

*Horace London* of counsel, for the respondent

DOWLING, J.:

The complaint herein sets forth that between June 23 and June 30, 1920, plaintiff sold and delivered to defendant certain merchandise at the agreed price of $4,672.79, whereof $3,133.82 has been paid, leaving an unpaid balance due from defendant to plaintiff of $1,538.97. Defendant by his answer for a separate defense set forth that prior to August 3, 1920, he had a claim against plaintiff for a sum in excess of $5,000 for damages by reason of plaintiff's failure to perform, and to deliver goods under, an agreement between them for the purchase and sale thereof;

that thereafter and prior to the commencement of the action and about August 3, 1920, plaintiff and defendant entered into an agreement whereby plaintiff agreed to receive, and defendant agreed to pay, the sum of $3,133.82 in full satisfaction and discharge of the plaintiff's claim for goods, wares and merchandise referred to in the complaint, and of the defendant's counterclaim for damages for breach of a contract with him; and that thereupon and pursuant to such agreement of settlement between them, defendant paid to plaintiff, and plaintiff received from the defendant and accepted, the said sum of $3,133.82 in full satisfaction and discharge of plaintiff's claim.   Under the phraseology of the answer, the defense set up was strictly one of payment, but upon the trial, when defendant was allowed to amend his answer by incorporating certain denials therein, the defendant's counsel stated to the court that he had pleaded an accord and satisfaction, and the plaintiff's counsel also treated the answer as setting up " an attempted defense of an accord and satisfaction."   Thereafter throughout the course of the trial no distinction was made between payment and an accord and satisfaction, as the answer was regarded as being sufficient to raise both issues.

Defendant, having the affirmative in the case, introduced evidence tending to show that he had bought from plaintiff under a written contract, in October, 1919, 650,000 yards of material consisting of canvas, of which some shipments had been made, but the contract had not been completely performed and the market had risen five cents a yard.   Concededly conversations had taken place between the parties regarding the non-fulfillment of the contract, and there were constant complaints of late deliveries and demands for more goods, and there was a dispute upon this subject between them; the defendant claimed that he had sustained damages of about $30,000 because of the failure to deliver the goods on time under this contract, and also because of the failure to completely perform.   It is defendant's contention that in April, 1920, he had an interview with the representative of plaintiff at the mill in New Hampshire, at which he was promised that more goods would be shipped; and that later in August, when the same representative called on the defendant at the latter's office in New York for a check for the amount due for plaintiff's goods sued for herein, namely, $4,672.79, defendant asked for an allowance of five cents on every yard under the contract for 650,000 yards, of which he had received only about 218,000 yards.   As the result of the conversations between them, defendant claims that plaintiff's representative finally agreed to make an allowance of two cents

27

a yard on some 76,000 yards of jute already paid for, and told defendant to mail a check and put anything he wished in the way of a receipt on the back of the check, and that when that check was deposited, things would be settled; that the allowance of two cents a yard would settle the whole matter between them and there would be no come-back. Acting upon this alleged agreement, defendant, on August 3, 1920, sent his check for the sum of $3,133.82; forming a part of the check and attached thereto was a voucher marked " Do not detach. This check is in full payment of the following account, and the payee accepts it as such." Then follow the items of the five bills for the goods in suit delivered by plaintiff, aggregating $4,672.79, with a notation below.

" Credit allowance on —
  " #122 /22″ 660 pcs 32082¾ yds.
•  " 124 /24- 882 pcs 44866     "

                           76948¾
              @            2¢                    1538.97

" In full payment                              $3133.82
  up to date — "

Defendant claims that this check was mailed to plaintiff accompanied by the following letter:

" *August* 3, 1920.
" Milford Spinning & Weaving Corporation,
                           " Milford, New Hampshire:
" Gentlemen.— Enclosed you will find our check No. 2036 for $3133.82 in full and entire payment of our account with you to date as itemized on the reverse side of this voucher.

" You will note that in accordance with our conversation we have only deducted a credit of $1538.97 which represents about 7½% of the loss we sustained through your failure to properly live up to the order you accepted from us for the 600,000 yards of Cotton and Jute Canvas. We would add that as a matter of fairness we would be perfectly justified in asking you to reimburse us for the entire loss that you compelled us to sustain, but in order to bring this matter to an amicable adjustment we have deducted a nominal sum and as we said before, the enclosed check pays you up in full of our entire account.

                  " Very truly yours,
" SG.                    ·           J. MANOWITZ & SONS."

Plaintiff denies that it received this letter. But it did receive the check, which it put through its bank account on August fifth,

and which was collected from defendant's bank on August seventh, as the indorsement shows. Under date of August fifth, the day on which the check was deposited by plaintiff, an entry was made in defendant's account on plaintiff's books crediting him with the payment of the sum of $3,133.82, the amount of his check, and also entering a credit of $1,538.97, the amount of the deduction, entered as " credit " as of the same date. The amount of this latter credit was thereafter canceled by lines through the amount, but the word " credit " remained unchanged, and an entry of the same amount $1,538.97 under date of April 12, 1921, was thereafter entered in the journal to balance the account.

Defendant contended that there was an actual agreement made between the parties, whereby the defendant should be credited with the sum of $1,538.97, and should send a check to plaintiff for the amount of its bill less that sum, in full payment of all claims between them. This agreement is in dispute, and the receipt of the letter, which would tend to establish the claim that there had been such an agreement, is denied by the plaintiff. The entries in plaintiff's books of account tending to show either an arrangement for the payment, or an acceptance of the deduction in question as justly due the defendant, have not been explained satisfactorily by plaintiff. And plaintiff made no demand for further payment until August tenth, five days after it had received the check and deposited it and three days after it had been paid.

In view of the manner in which both parties treated the issues presented in the case as involving the defenses of payment and of an accord and satisfaction, it is necessary to consider the objections urged upon this appeal from both viewpoints.

Considered as a defense of payment based upon an actual agreement made between the parties, the question was one solely of fact, and in the light of the entries in plaintiff's books for which no sufficient reason has been given, and of the other documentary evidence in the case, we think that the finding that no such agreement was made is against the weight of the evidence, and that the judgment should be reversed and a new trial granted as to that issue.

As to the defense of accord and satisfaction, not only is the verdict of the jury against the weight of the evidence, but the judgment would have to be reversed in any event because of what we think is prejudicial error to defendant in the charge of the learned trial court. Having in mind the confusion between these two defenses which existed as the result of the inconsistency between the original defense based solely on payment and the proof offered, without objection, which covered both payment and an accord

First Department, November, 1922.          [Vol. 203

and satisfaction, the jury could not have had in mind the differences in proof required to sustain either of these defenses. The learned trial court charged as follows:

" I charge you as a matter of law that the sending of a check for $3,100 would not have been payment of the $4,600 account unless the minds of the parties met before that on some question which had been in dispute; that is, there must have been what the law calls a *bona fide* dispute, a dispute in good faith, a question on which their minds differed; and in relation to the final agreement their minds must have met on that as they would have to meet on any other proposition in order to form a contract.

" The only question here for you, and it carries down to this simple proposition, is this: Was there an open, honest dispute between these parties, in relation to some claims that the defendant had against the plaintiff? Was that on the 31st of August reduced to an agreement by this conversation claimed by Mr. Manowitz to have been held between himself and Mr. Goldman, and did their minds meet on the proposition that day, that this sum of fifteen hundred dollars was to be allowed? If it did, then there is an end of the case, and your verdict must be for the defendant; if it did not, then the plaintiff is entitled to sue here for the admitted sum that was not paid in cash, and your verdict, if you hold that there was no agreement, that there had been no honest dispute, no open question between them, will be for the plaintiff in the sum of $1,538.97, with interest, which amounts in all to the sum of $1,662.09."

This was entirely accurate as to the defense of payment, based upon defendant's claim of an actual agreement made between him and the plaintiff's representative, by which plaintiff would allow a deduction of two cents a yard on some 76,000 yards and accept a check less that amount in full payment of its bill against defendant. Later in his charge the learned trial court instructed the jury as to their duty to weigh the evidence as to the making of the agreement between the parties, but in doing so he said:

" If you hold that there was an honest dispute, an open question of difference between them, and they had this conversation, and an agreement, and that their minds met on it, then it is your duty to bring in a verdict for the defendant. If you hold on the other hand that there was no honest dispute, that there was no open question, that their minds did not meet, that this was simply an arbitrary action of the defendant, Mr. Manowitz, in taking advantage of what he knew to be the ' hard-up condition ' as explained by the plaintiff, of the plaintiff, then your verdict will be for the plaintiff   *   *   * "

At the close of the charge the following took place: " Mr. Loeb: I respectfully except.  If your Honor please, I respectfully except to that portion of your charge in which you state that the mere sending of the check and its acceptance would not constitute an accord and satisfaction unless there was an agreement.  The Court:  I repeat that, and of course give you the benefit of your position on the law on that. Mr. Loeb: Exception.  I ask your Honor to charge the jury that by tendering this check with this deduction and the acceptance of it, the plaintiff had notice that the defendant disputed his liability.  The Court: No, I am going to leave that.  I am going to let them take that into account as circumstances to be considered in determining this question, which is the question in the case; was there any honest dispute, was there what the law calls a *bona fide* dispute between these people?  They can take all those circumstances into account in order to determine the probability of it.  Mr. Loeb: Your Honor will not charge that as a matter of law?  The Court: No, no.  Mr. Loeb: I respectfully except."

It thus becomes apparent that the learned trial court did not give the jury any instructions as to what the effect would be if they found that the defendant sent the check bearing the indorsement referred to, accompanied by the letter which he claims was sent to plaintiff, and plaintiff, with full knowledge of the fact that there had been a dispute between them due to its failure to fully perform another contract and its failure to perform part of it on time, and a claim for damage made thereunder by defendant, accepted the check, deposited it in its account and credited the defendant on its books with the check and with a credit entry for the balance, thereby discharging defendant's obligation to it.

The charge as a whole placed upon the defendant the burden of establishing an agreement of accord and satisfaction and excluded entirely from consideration the legal effect of what the parties did as constituting an accord and satisfaction, even without a clear or undisputed agreement between them.  It is quite true that in many of the cases which have to do with the defense of an accord and satisfaction reference is made to the fact that an accord and satisfaction requires a new agreement and a performance thereof.  (*Mance* v. *Hossington*, 205 N. Y. 33; *Nassoiy* v. *Tomlinson*, 148 id. 326.)  But the agreement between the parties to accept a lesser sum in accord and satisfaction of a debt between them as to which there is a *bona fide* dispute, can be implied from the facts in the case, such as the acceptance of the amount tendered with full knowledge of the fact that it is being paid in full discharge of the payee's claim.  As was said by Mr. Justice HISCOCK, in

*Whitaker* v. *Eilenberg* (70 App. Div. 489), at page 492: " In the next place, we do not think that the learned county judge was entirely fortunate and accurate in defining the questions between the parties as one whether a new contract had been made between them. While it may be said that in a very general way this issue was involved, the more exact and specific question was whether the acceptance by plaintiff of defendant's checks, under all of the circumstances, constituted a payment and satisfaction of all claims, and this even though no new contract had been made covering the disputed shipments, and even though defendant was not justified in his original contention that the grapes were below the grade he was entitled to, and that he had a right, therefore, to treat them upon a basis different from that provided in the original contract. We conclude that this question must be answered, as matter of law, in the defendant's favor."

And at page 493: " In each case plaintiff, with full knowledge of defendant's position and claim and clearly understanding that it was intended to be in full payment of the shipment in question, accepted, retained and collected the money upon defendant's check. He did not even make any protest or objection until several months afterwards. He fully understood the conditions upon which the checks were sent, and, when he accepted and used the latter, we think it must be held that he accepted and assented to the conditions which accompanied them."

And at page 494 he added: " We do not regard it as of any significance in this case that the checks sent did not upon themselves explicitly state that they were in full payment. The letter or account or both sent with each one clearly showed that it was intended to be in full settlement of the balance for the given shipment in question. Plaintiff understood this clearly enough."

In *Fuller* v. *Kemp* (138 N. Y. 231, 237): " The tender and the condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of his act."

As the whole effect and tenor of the charge was that defendant was not entitled to recover unless he proved an express antecedent agreement between the parties for the acceptance of the lesser sum in satisfaction of the account between them, and as the legal effect of plaintiff's acceptance of the check, under the conditions which the jury might find, was not submitted to them, we are

of the opinion that the judgment must also be reversed upon this ground and a new trial ordered.

The judgment and order appealed from should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., PAGE, MERRELL and FINCH, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.